**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**MICHELLE RAY,**

        **Plaintiff,**

v.                               **Civil Action 2:20-cv-1897
Judge Edmund A. Sargus
Magistrate Judge Jolson**

**COMMISIONER OF
SOCIAL SECURITY,**

        **Defendant.**

**REPORT AND RECOMMENDATION**

Plaintiff, Michelle Ray, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 17) and **AFFIRM** the Commissioner's decision

**I.    BACKGROUND**

Plaintiff filed her applications for DIB and SSI on August 30, 2016, alleging that she was disabled beginning July 14, 2015. (Tr. 276–85). After her applications were denied initially and on reconsideration, the Administrative Law Judge ("ALJ") held a hearing on August 22, 2018. (Tr. 134–67). On December 18, 2018, the ALJ issued a decision denying Plaintiff's applications for benefits. (Tr. 10–43). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on April 14, 2020 (Doc. 1), and the Commissioner filed the administrative record on August 31, 2020 (Doc. 16). This matter is ripe for consideration. (*See* Docs. 17, 18).

### B. Relevant Medical History

Because Plaintiff's Statement of Errors pertains to only her physical impairments, the Undersigned limits her discussion of the record to the same. The ALJ usefully summarized Plaintiff's medical records:

> X-ray results of the [Plaintiff]'s lumbar spine from February 2015 documented L5-Sl degenerative disc disease and facet arthritis (Exhibit 4F/42). Magnetic resonance imaging ("MRI") scan results from October 2018 documented right greater than left facet hypertrophy throughout the lower levels of the lumbar spine without significant stenosis (Exhibit 31F/2–3).
>
> X-ray results from February 2015 documented mild left hip and sacroiliac joint degenerative changes (Exhibit 4F/42). X-ray results of the [Plaintiff]'s left hip from February 2017 documented osteoarthritis and coxa profunda morphology, with no acute osseous abnormality (Exhibit 18F/40–41). X-ray results from December 2017 documented stable arthritic changes in both hip joints (Exhibit 18F/121–122).
>
> X-ray results of the [Plaintiff]'s left knee from December 2017 documented osteoarthritis (Exhibit 18F/121).
>
> The evidence documents the clinical diagnosis of meralgia paraesthetica of the lower extremities (Exhibits 6F/5, 7F/3, 14F/2, and 18F/44 and 102).
>
> Pulmonary function study results from November 2014 documented mild obstructive impairment (Exhibit 1F/1–3). The evidence also documents the clinical diagnosis of asthma (Exhibit 3F/5). The [Plaintiff] has body mass index ("BMI") consistent with Level II-III obesity (Exhibits 6F/4, 18F/125, and 22F/1).
>
> Computerized tomography ("CT") scan imaging results of the [Plaintiff]'s abdomen and pelvis from March 2015 documented soft tissue density lesion abutting the fundus of the uterus on the left side possibly representing a new subserosal fibroid or the fibroid seen of previous diagnostic imaging results (Exhibit 2F/1–3). MRI scan results of the [Plaintiff]'s pelvis from April 2015 documented low signal intensity solid left adnexal mass most suggestive of ovarian fibroma or fibrothecoma (Exhibit 3F/3). The [Plaintiff] underwent left and right salpingectomy procedure in June 2015 (Exhibit 3F/20).

(Tr. 15–16).

### A. The ALJ's Decision

The ALJ found that Plaintiff meets the insured status requirement through December 31, 2020, and had not engaged in substantial gainful employment since July 14, 2015, the alleged

2

onset date. (Tr. 15). The ALJ determined that Plaintiff suffered from the following severe impairments: degenerative changes of the lumbar spine, osteoarthritis of the hips and left knee, meralgia paraesthetica of the lower extremities, asthma, chronic obstructive pulmonary disease ("COPD"), obesity, ovarian fibroma, and uterine fibroid. (*Id*.). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (Tr. 23).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ determined:

> After careful consideration of the entire record, it is determined that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). She must alternate between sitting and standing every 90 minutes for 2 to 3 minutes at a time, but can remain on task while doing so. Climbing ramps and stairs, crawling, crouching, kneeling, stooping, and exposure to dust, fumes, gasses, odors, and poor ventilation, are each limited to no more than frequently. She cannot climb ladders, ropes and scaffolds, and must avoid all exposure to hazards such as moving machinery and unprotected heights.

(Tr. 25).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not sufficiently supported by the medical evidence and other evidence in the record." (Tr. 26).

The ALJ then turned to the relevant opinion evidence, considering first, the opinion of state agency reviewer Yeshwanth Bekal, who opined that Plaintiff is limited to light work with exertional, environmental, and postural limitations. (Tr. 27). The ALJ found Dr. Bekal's opinion to be supported by the totality of the evidence, including Plaintiff's treating physician's reports, test results, and subjective symptoms. (*Id*. at 27–28).

The ALJ then explained how this evidence and Dr. Bekal's opinion impacted Plaintiff's RFC:

> This evidence does not reasonably support further restriction in the [Plaintiff]'s

3

> residual functional capacity and could support a determination that she is less physically limited than set forth above as of the alleged onset date of disability, as the BDD reviewing physician initially opined (Exhibits 1A/6–8, and 2A/6–8), which are also entitled to partial weight.
>
> However, the [Plaintiff]'s environmental limitations were phrased into vocationally relevant terms such as "frequent" and "no." These opinions also predate the [Plaintiff]'s most recent diagnostic imaging of her hips, left knee, and spine, as well as her functional capacity evaluation results, which reasonably justify the additional functional limitations and restrictions set forth above, and are entitled to less weight to that extent. These opinions are consistent with and supported by the totality of the evidence, as discussed above, and not credibly contradicted, as no acceptable medical source under the Regulations credibly opined as to additional or greater physical functional limitations and restrictions as of the alleged onset date of disability.
>
> The evidence received into the record after these opinions concerning the [Plaintiff]'s physical status did not otherwise provide any credible or objectively supported new and material information that would alter these findings concerning her functional limitations and restrictions as of the alleged onset date of disability. Accordingly, the opinions of the BDD reviewing physicians are each overall entitled to partial weight in assessing the [Plaintiff]'s physical functional limitations and restrictions as of the alleged onset date of disability.

(Tr. 28–29).

Next, the ALJ considered the opinion of Plaintiff's primary care physician, Dr. Mark Troyer, who opined that Plaintiff could: stand and walk for only one to two hours total and for thirty minutes a time; sit for six hours total and for thirty minutes at a time; lift only up to five pounds; and was markedly limited in her ability to push/pull, bend, reach, handle, or engage in repetitive foot movements. (Tr. 29–30). The ALJ afforded Dr. Troyer's opinion no weight, finding it inconsistent with and unsupported by the totality of the evidence. (*Id.*).

Finally, the ALJ considered the opinions of Plaintiff's physical therapist:

> The non-medical opinions of a physical therapist who conducted a functional capacity evaluation of the [Plaintiff] are entitled to little weight in assessing her physical functional limitations and restrictions as of the alleged onset date of disability (Exhibit 29F/7–58). This source opined that the [Plaintiff] is capable of carrying and lifting consistently with the requirements of light work (Exhibit 29F/13), which is consistent with and supported by the totality of the evidence, as

4

> discussed above, and are entitled to partial weight to that extent. However, the remainder of this source's opinions is inconsistent with and unsupported by the totality of the evidence, as discussed above, and entitled to no weight to that extent.
> . . .

(Tr. 30).

Relying on the VE's testimony, the ALJ concluded that Plaintiff can perform her past relevant work as a social worker, as well as other jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as a cashier, office helper, and sales attendant. (Tr. 33–35). She therefore concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from July 14, 2015, through the date of the decision (20 CFR (20 CFR 404.1520(g) and 416.920(g))." (Tr. 36).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

Plaintiff asserts that the ALJ erred in formulating her RFC. (*See generally* Doc. 17). Specifically, she contends that the ALJ improperly relied on only the limitations set forth by the state agency physician, who identified "far fewer severe impairments" than the ALJ. (*Id*. at 9). Plaintiff emphasizes that, while the state agency physician considered only Plaintiff's asthma and gastrointestinal disorders to be severe, the ALJ identified other severe impairments, including degenerative changes of the lumbar spine, osteoarthritis of the hips and left knee, meralgia paraesthetica of the lower extremities, COPD, obesity, ovarian fibroma, and uterine fibroid. (*Id*.). But "[t]he only additional limitation included in the [RFC] that was not opined by the state agency physician was the need for [Plaintiff] to alternate positions." (*Id*. at 10). So, says Plaintiff "[a] subsequent reviewer cannot understand how the ALJ constructed a residual functional capacity that was so similar to the state agency physician's opinions when the ALJ admitted that [Plaintiff] suffers from numerous additional severe impairments." (*Id*. at 9). As explained below, the Undersigned disagrees.

Up front, while Plaintiff contends there are "glaring inconsistencies" between the ALJ's and state agency physician's opinions, (*id*. at 8), the state agency physician expressly considered Plaintiff's degenerative disc disease, uterine fibroids, mild obstructive impairment, possible ovarian mass, and obesity. (Tr. 171–72, 191–92, 194–95). The ALJ and the state agency physician simply viewed the severity of these impairments differently.

In any event, the thrust of Plaintiff's argument concerns her RFC. The RFC "circumscribes 'the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities.'" *Johnson v. Comm'r of Soc. Sec.*, No. 08-CV-14363, 2010 WL 520725, at *7 (E.D.

Mich. Feb. 8, 2010) (quoting *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002)). This means that "'[a] claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other.'" *Johnson*, 2010 WL 520725, at *7 (quoting *Young v. Comm'r of Soc. Sec.*, 2004 WL 1765480, at *5 (E.D. Mich. 2004)). "'The regulations recognize that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms." *Johnson*, 2010 WL 520725, at *7 (alteration in original) (quoting *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007)). "'Put another way, the existence of a severe impairment says nothing as to its limiting effects.'" *Hicks v. Berryhill*, No. 3:17-CV-176-HBG, 2018 WL 2074181, at *4 (E.D. Tenn. May 3, 2018) (quoting *Simpson v. Comm'r of Soc. Sec.*, No. 1:13-CV-640, 2014 WL 3845951, at *9 (S.D. Ohio Aug. 5, 2014)). Importantly, Plaintiff "bears the burden to show that an impairment invokes work-related limitations." *Hicks*, 2018 WL 2074181, at *4 (citing *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

Plaintiff has failed to satisfy her burden. For support, she relies on the opinions of her treating physician and physical therapist. Plaintiff's treating physician, Dr. Mark Troyer, opined on a state medical form that Plaintiff could stand and walk for only one to two hours total and for thirty minutes a time and could sit for six hours total and for thirty minutes at a time. (Tr. 555). He also opined that Plaintiff could lift only up to five pounds and that she was markedly limited in her ability to push/pull, bend, reach, handle, or engage in repetitive foot movements. (*Id.*).

But the ALJ rejected Dr. Troyer's opinion, finding it inconsistent with the record evidence. (Tr. 29–30). And substantial evidence supports that finding. As the ALJ notes, Dr. Troyer's medical form, which does not contain narrative support for the checkbox limitations, attaches March 2017 progress notes. (Tr. 556–59). The notes show Plaintiff's reports of throbbing pain in

her left thigh and bottom of her left foot due to meralgia paresthetica that worsens with prolonged sitting or standing. (Tr. 556). Plaintiff "endorse[d] only rare low back pain that does not bother her at this time." (*Id*.). Dr. Troyer's notes also note that Plaintiff had normal breath sounds, no wheezes, and no rales. (Tr. 557). Additionally, she had "normal range of motion," "normal muscle tone," "normal" coordination," and "5/5 strength and intact fine touch/vibration in bilateral [upper extremities and lower extremities]." (Tr. 557–58).

The ALJ also noted additional medical records showing that Plaintiff had normal range of motion of her cervical spine, negative and normal electromyography of the lower extremities, negative, normal Spurling and straight leg raising sign and test results, was neurologically intact upon repeated physical examinations with good or normal balance, coordination, cranial nerves, motor bulk, power, strength, tone, pulses, sensory, reflexes, strength, and range of motion in all muscles, joints, and extremities, and had normal gait with no falls, problems, or unsteadiness on her feet. (Tr. 28).

Plaintiff's physical therapist, Ms. Wadsworth, also found that Plaintiff had good strength for lifting and carrying, had good range of motion and balance, and no increased pain with sitting. (Tr. 996). Ms. Wadsworth, however, noted that Plaintiff lost coordination in her hands to complete fine and gross motor tasks and had no detectable reflexes in the upper or lower extremities. (*Id*.). The ALJ adopted Ms. Wadsworth's opinion regarding Plaintiff's ability to lift and carry, finding it consistent with the record evidence, but, as with Dr. Troyer, found the remainder of her opinion inconsistent with the medical evidence. (Tr. 30–31).

While Plaintiff asserts that the ALJ failed to "actual[ly] analyze" these opinions and repeatedly "copied and pasted her analysis," she does not explain how these opinions warrant specific additional restrictions that the ALJ failed to accommodate. It is her burden to do so. *See,*

8

*e.g., Frye v. Soc. Sec. Admin.*, No. 3:17-1466, 2018 WL 6710039, at *6 (M.D. Tenn. Dec. 4, 2018), *report and recommendation adopted sub nom. Frye v. Comm'r, Soc. Sec. Admin.*, No. 3:17-CV-01466, 2018 WL 6696938 (M.D. Tenn. Dec. 20, 2018) (rejecting plaintiff's reliance on opinions containing limitations that were more restrictive than RFC because plaintiff failed to meet her burden to identify how the opinions "undermine the formulated RFC").

Rather, Plaintiff focuses on her numerous severe impairments, including degenerative changes of the lumbar spine, osteoarthritis of the hips and left knee, meralgia paraesthetica of the lower extremities, COPD, obesity, ovarian fibroma, and uterine fibroid. According to her, the ALJ erred by failing to explain why she did not accommodate these severe impairments. (Doc. 17 at 9–10). As noted, however, "'the existence of a severe impairment says nothing as to its limiting effects.'" *Hicks*, 2018 WL 2074181, at *4 (quoting *Simpson*, 2014 WL 3845951, at *9). And the ALJ concluded that these impairments did not warrant additional limitations.

For example, concerning her asthma and COPD, the ALJ noted that Plaintiff's respiratory conditions and related symptoms were stable, tolerable, and well-controlled with no history of complications or hospitalizations. (Tr. 27 (citing Tr. 435, 475, 646, 704, 708, 7111, 714, 723, 726, 733, 735, 900, 916, 981)). She also noted that Plaintiff repeatedly had negative and normal cardiovascular and respiratory findings, with normal breath sounds, chest and lungs clear to auscultation bilaterally, and no crackles, rales, rhonchi, or wheezing. (Tr. 27 (citing Tr. 546, 557, 676, 705, 713, 720, 734, 739, 765–66, 773, 789–90, 795, 802–03, 806–07, 811, 817, 820, 845, 946, 996)).

Similarly, as for Plaintiff's ovarian fibroma, the ALJ noted that Plaintiff repeatedly had negative and normal endocrinal, gastrointestinal, and genitourinary findings. (Tr. 26 (citing Tr. 557, 676, 706, 739, 745, 773, 789, 795, 802, 806, 817)). And, concerning Plaintiff's obesity, the

ALJ adopted the opinion of the state agency physician that Plaintiff should "avoid unprotected heights and climb ladders due to obesity and back pain." (*See* Tr. 25, 194–95); *see also Saylor v. Berryhill*, No. CV 15-162-HRW, 2017 WL 1102710, at *3 (E.D. Ky. Mar. 21, 2017) ("Clearly contrary to Plaintiff's argument [that the ALJ did not consider plaintiff's obesity in formulating the RFC], . . . the ALJ incorporated the postural and environmental limitations assessed by treating physician . . . as [the ALJ found that they] accommodate[d] the exacerbating effects of the claimant's obesity upon his other impairments"). To the extent Plaintiff suggests this evidence of record is open to another interpretation, favorable to her, the Undersigned declines to reweigh the evidence. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).

In sum, it was Plaintiff's burden to convince the ALJ that these impairments mandated stricter limitations. She failed to do so. *See, e.g.*, *Cejka v. Comm'r of Soc. Sec.*, No. 12-11102, 2013 WL 1317213, at *15 (E.D. Mich. Feb. 27, 2013), *report and recommendation adopted*, No. 12-11102-DT, 2013 WL 1294133 (E.D. Mich. Mar. 29, 2013) ("Plaintiff acknowledges that no treating physician imposed any limitations on plaintiff as a result of her carpal tunnel syndrome, and does not point to any limitations imposed by any consulting or examining physician."). Plaintiff has shown no reversible error as a result.

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED**, and that judgment be entered in favor of Defendant.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting

10

authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

    IT IS SO ORDERED.


Date: January 25, 2021                        /s/ Kimberly A. Jolson
                                               KIMBERLY A. JOLSON
                                               UNITED STATES MAGISTRATE JUDGE